## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| AMERICAN INDUSTRIAL CONTRACTORS, INC., on behalf of itself and all others similarly situated, | |
| | CASE NO. |
| Plaintiff, | |
| v. | |
| | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| DANFOSS A/S, DANFOSS COMMERCIAL COMPRESSSORS, LTD., DANFOSS, INC., DANFOSS SCROLL TECHNOLOGIES, LLC., DANFOSS TURBOCOR COMPRESSORS, INC., DANFOSS COMPRESSOR LLC, TECUMSEH PRODUCTS CO., TECUMSEH COMPRESSOR COMPANY, TECUMSEH DO BRASIL, LTDA., TECUMSEH DO BRASIL USA, LLC, WHIRLPOOL CORPORATION, WHIRLPOOL S.A., EMBRACO NORTH AMERICA, INC., APPLIANCES COMPONENTS COMPANIES, SPA, ACC USA LLC, PANASONIC CORPORATION, PANASONIC CORPORATION OF NORTH AMERICA, EMERSON CLIMATE TECHNOLOGIES, INC., COPELAND CORPORATION LLC, CR COMPRESSORS, LLC, SCROLL COMPRESSORS, LLC, and EMERSON NETWORK POWER, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff American Industrial Contractors, Inc. ("Plaintiff"), on behalf of itself and on behalf of a class of all those similarly situated, brings this action against Defendants pursuant to the Federal antitrust laws, Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 15 and 26 ("Clayton Act"). Plaintiff makes the allegations herein on personal knowledge, or on

1

information and belief based upon investigation made by and through his attorneys, as well as upon the admissions of certain Defendants, as follows:

## NATURE OF THE CASE

1.    The case arises out of an alleged conspiracy by Defendants to fix, raise, maintain, and/or stabilize prices of, and allocate the worldwide market for, Refrigeration Compressors (defined below). Defendants' unlawful acts caused Plaintiff American Industrial Contractors, Inc. and other Class members to pay artificially inflated prices to Defendants for Refrigeration Compressors or products containing Refrigeration Compressors manufactured by one or more of the Defendants. As used herein, "Refrigeraion Compressor Product" refers to a Refrigeration Compressor or a product containing a Refrigeration Compressor.

2.    Plaintiffs bring this case on behalf of a Class of direct purchasers of Refrigeration Compressor Products manufactured by one or more of the Defendants ("the Class"), as further defined below, to recover for injuries incurred as a result of Defendants' unlawful conduct starting at least as early as January 1, 1996 and continuing until the present (the "Class Period").

## JURISDICTION AND VENUE

3.    This action is instituted under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.    This action is also instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, to secure injunctive relief against Defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

6.      Venue is proper in this District pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391(b), (c) and (d). Venue is proper in this District because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out, in this District.

7.      Defendants, on information and belief, maintain offices, have agents, transact business, or are found within this judicial District.

## PARTIES

### Plaintiff

8.      Plaintiff American Industrial Contractors, Inc. is a North Carolina corporation with its principal place of business in Greensboro, North Carolina. During the relevant time period, Plaintiff purchased Refrigeration Compressor Products manufactured by one or more of the Defendants from one or more of the Defendants. The prices that Plaintiff paid to Defendants or their co-conspirators for Refrigeration Compressor Products were, as a result of the conspiracy herein alleged, higher than they otherwise would have been. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

3

**Danfoss Defendants**

9.     Defendant Danfoss A/S is a privately-held Danish company with its principal place of business in Nordborg, Denmark. Danfoss' Refrigerator and Air Conditioning Division, responsible for manufacturing and selling the company's Refrigeration Compressor Products, recorded global sales of approximately $1.9 billion in 2007. The United States is the Division's largest geographic market. During the Class Period, Danfoss A/S has marketed and sold Refrigeration Compressor Products in this District and other locations in the United States.

10.     Defendant Danfoss Inc., a Delaware corporation with its principal place of business at Baltimore, Maryland, is a wholly-owned subsidiary of Defendant Danfoss A/S. Danfoss Inc. is the primary U.S. sales and marketing arm of Defendant Danfoss A/S, and is the headquarters of the U.S. operations of Danfoss' Refirgerator and Air Conditioning Division. During the Class Period, Danfoss Inc. marketed and sold Refrigeration Compressor Products in this District and other locations in the United States. Defendant Danfoss A/S dominated and controlled the finances, policies and affairs of Danfoss Inc. relating to the antitrust violations alleged in this complaint.

11.     Defendant Danfoss Commercial Compressors, Ltd. is a Delaware corporation with its principal place of business at Lawrenceville, Georgia. Danfoss Commercial Compressors either directly or indirectly, is a wholly owned subsidiary of defendant Danfoss A/S. During the Class Period, Danfoss Commercial Compressors marketed and sold Refrigeration Compressor Products Compressors in this District and other locations in the United States. Defendant Danfoss A/S dominated and controlled the finances, policies and affairs of Danfoss Commercial Compressors relating to the antitrust violations alleged in this complaint.

4

12.     Defendant Danfoss Scroll Technologies, LLC (f/k/a Scroll Technologies, LLC) is a Delaware limited liability company with its principal place of business at Arkadelphia, Arkansas. Danfoss Scroll Technologies, either directly or indirectly, is wholly owned by defendant Danfoss A/S. During the Class Period, Danfoss Scroll Technologies marketed and sold Refrigeration Compressor Products in this District and other locations in the United States. Defendant Danfoss A/S dominated and controlled the finances, policies and affairs of Danfoss Scroll Technologies relating to the antitrust violations alleged in this complaint.

13.     Defendant Danfoss Turbocor Compressors, Inc. is a Delaware corporation with its principal place of business at Tallahassee, Florida. Danfoss Turbocor Compressors is a subsidiary of Defendant Danfoss A/S. Danfoss Turbocor Compressors manufactured, marketed and/or sold Refrigeration Compressor Products in this District and the United States during the Class Period. Defendant Danfoss A/S dominated and controlled the finances, policies and affairs of Danfoss Turbocor Compressors relating to the antitrust violations alleged in this complaint.

14.     Defendants identified in paragraphs 9-13 are collectively referred to herein as "Danfoss."

**Tecumseh Defendants**

15.     Defendant Tecumseh Products Company ("Tecumseh Products") is a Michigan corporation with its principal place of business in Ann Arbor, Michigan. Tecumseh Products Co. is one of the world's largest independent producers of hermetic compressors, producing compressors for residential and commercial refrigerators, freezers, water coolers, dehumidifiers, window air conditioning units and residential and commercial central system air conditioners and heat pumps. During the Class Period, Tecumseh Products Co. marketed and sold Refrigeration Compressor Products in this District and in other locations in the United States.

16.     Defendant Tecumseh Compressor Company is a Delaware corporation with its principal place of business at Ann Arbor, Michigan. Tecumseh Compressor Co. is a wholly owned subsidiary of defendant Tecumseh Products. Defendant Tecumseh Compressor Co., either directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other locations in the United States. Defendant Tecumseh Products dominated and controlled the finances, policies and affairs of Tecumseh Compressor Company relating to the antitrust violations alleged in this complaint.

17.     Defendant Tecumseh do Brasil, Ltda. ("Tecumseh Brasil"), a wholly owned subsidiary of Defendant Tecumseh Products, is a Brazilian corporation with its principal place of business in Sao Carlos, Brazil. Tecumseh Brasil is Defendant Tecumseh Products' largest foreign manufacturing source, with annual capacity of 17 million Refrigeration Compressors. Defendant Tecumseh Brasil, directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressors and products containing such Refrigeration Compressors in this District and other locations in the United States during the Class Period. Defendant Tecumseh Products Company dominated and controlled the finances, policies and affairs of Tecumseh Brasil relating to the antitrust violations alleged in this complaint.

18.     Defendant Tecumseh do Brasil USA, LLC ("Tecumseh Brasil USA") is a Delaware limited liability company. Tecumseh Brasil USA is wholly owned by defendant Tecumseh Brasil. Tecumseh Brasil USA, directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other locations in the United States during the Class Period. Defendant Tecumseh Products Company dominated and controlled the finances, policies and affairs of Tecumseh Brasil USA relating to the antitrust violations alleged in this complaint.

6

19.    Defendants identified in paragraphs 15-18 are collectively referred to herein as "Tecumseh."

**Whirlpool Defendants**

20.    Defendant Whirlpool Corporation is a Delaware Corporation with its principal place of business in Benton Harbor, Michigan. Whirlpool Corporation reported 2008 compressor sales accounting for 6% of the company's $19 billion in net sales. Whirlpool Corporation also manufactures and markets a full line of major appliances and related products, some of which incorporate Refrigeration Compressors produced by Whirlpool Corporation. Home freezers and refrigerators containing Refrigeration Compressors accounted for approximately 31% of Whirlpool Corporation's 2008 sales. During the Class Period, either directly or through subsidiaries, Whirlpool Corporation marketed and sold Refrigeration Compressor Products in this District and other locations in the United States.

21.    Defendant Whirlpool S.A. (f/k/a Empresa Brasileria de Compressores S.A.), a wholly-owned subsidiary of Defendant Whirlpool Corporation, is a Brazilian company with its principal place of business in Joinville, Brazil. Whirlpool S.A. includes Whirlpool's compressor business, which operated under the name Embraco until 2006. Whirlpool S.A. holds itself out as the world leader in Refrigeration Compressors, with a productive capacity of 27 million compressors per year and a global market share approaching 25%. Throughout the Class Period, Whirlpool S.A. has sold Brazilian-manufactured Refrigeration Compressor Products in this District and other locations in the United States. Defendant Whirlpool Corporation dominated and controlled the finances, policies and affairs of Whirlpool S.A. relating to the antitrust violations alleged in this complaint.

22.    Defendant Embraco North America, Inc. ("Embraco North America") is a wholly-owned subsidiary of Defendant Whirlpool Corporation. Embraco North America is a Delaware company with its principal place of business in Suwanee, Georgia. During the Class Period, Embraco North America has sold Refrigeration Compressor Products in the United States, including in this District. Defendant Whirlpool Corporation dominated and controlled the finances, policies and affairs of Embraco North America relating to the antitrust violations alleged in this complaint.

23.    Defendants identified in paragraphs 20-22 are referred to herein collectively as "Whirlpool."

**ACC Defendants**

24.    Defendant Appliances Components Companies SpA ("ACC") is an Italian company with its principal place of business located in Pordenone, Italy. ACC SpA, directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other localities in the United States during the Class Period.

25.    Defendant ACC USA, LLC is a limited liability company with its principal place of business at Madison, Alabama. ACC USA is wholly owned by Defendant ACC. Defendant ACC USA directly and/or through its parent company manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other localities in the United States during the Class Period. Defendant ACC dominated and controlled the finances, policies and affairs of ACC USA relating to the antitrust violations alleged in this complaint.

26.    Defendants identified in paragraphs 24-25 are collectively referred to herein as "ACC."

8

**Panasonic Defendants**

27.    Defendant Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) ("Panasonic Corporation") is a Japanese corporation with its principal place of business in Osaka, Japan. Defendant Panasonic directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products.

28.    Defendant Panasonic Corporation of North America ("Panasonic NA") is a Delaware corporation with its principal place at Secaucus, New Jersey.   Panasonic NA, which sells Refrigeration Compressor Products through its Panasonic Industrial Company division, is a wholly-owned subsidiary of defendant Panasonic Corporation. During the Class Period, Defendant Panasonic NA manufactured, marketed, and/or sold Refrigeration Compressor Products in this District and other localities in the United States.  Defendant Panasonic Corporation dominated and controlled the finances, policies and affairs of Panasonic NA relating to the antitrust violations alleged in this complaint.

29.    Defendants identified in paragraphs 27-28 are collectively referred to herein as "Panasonic."

**Emerson Defendants**

30.    Defendant Emerson Climate Technologies, Inc. ("Emerson Climate") is a Delaware corporation with its principal place of business in Sidney, Ohio.  Defendant Emerson Climate is a wholly owned subsidiary of Emerson Electric Company. Defendant Emerson Climate, directly or through its subsidiaries, marketed and/or sold Refrigeration Compressor Products in this District and other locations across the United States during the Class Period.

31.    Defendant Copeland Corporation, LLC is a Delaware limited liability company with its principal place at Rushville, Indiana.  Defendant Copeland is a wholly owned subsidiary

9

of defendant Emerson Climate. Defendant Copeland, directly or through its subsidiaries, marketed and/or sold Refrigeration Compressor Products in this District and other locations across the United States during the Class Period.

32.    Defendant CR Compressors, LLC is a Delaware limited liability company with its principal place at Rushville, Indiana. Defendant CR Compressors is a wholly owned subsidiary of defendant Emerson Climate. Defendant CR Compressors, directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other locations across the United States during the Class Period.

33.    Defendant Scroll Compressors, LLC is a Delaware limited liability company with its principal place at Sidney, Ohio. Defendant Scroll compressors is a wholly owned subsidiary of defendant Emerson Climate. Defendant Scroll Compressors, directly or through its subsidiaries, manufactured, marketed and/or sold Refrigeration Compressor Products in this District and other locations across the United States during the Class Period.

34.    Defendant Emerson Network Power, Inc. is a Texas corporation with its principal place of business in Columbus, Ohio. Defendant Emerson Network Power is a wholly owned subsidiary of Emerson Electric Company. Defendant Emerson Network Power, directly or through its subsidiaries, marketed and/or sold Refrigeration Compressor Products in this District and other locations across the United States during the Class Period.

35.    Defendants identified in paragraphs 30-34 are collectively referred to herein as "Emerson."

## CO-CONSPIRATORS

36.    Other persons, corporations and entities not named herein are co-conspirators with Defendants in the violations alleged. The acts alleged herein that were done by each of the

10

co-conspirators were fully authorized by each of these co-conspirators, or ordered and/or

undertaken by duly authorized officers, managers, agents, employees, or representatives of each

co-conspirator while actively engaged in management, direction, or control of its affairs. All

averments herein against any named Defendant are also averred against these unnamed co-

conspirators as though set forth at length.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action on behalf of itself and as a Class action under the

provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of

all members of the following Class:

> All persons (excluding governmental entities, Defendants,
> co-conspirators, other sellers or providers of Refrigeration
> Compressor Products, and the present and former parents,
> predecessors, subsidiaries, and affiliates of the foregoing) who
> purchased Refrigeration Compressor Products from any of the
> Defendants at any time during the period from January 1, 1996,
> until the effects of Defendants' anticompetitive conduct cease
> ("Class Period").

38.    The Class is so numerous that joinder of all members is impracticable. Due to the

nature of the trade or commerce involved, Plaintiff believes that the members of the Class are

geographically dispersed throughout the United States, and that joinder of all Class members

would be impracticable. While the exact number of Class members is unknown to Plaintiff at

this time, Plaintiff believes that there are at least tens of thousands of members of the Class and

that their identities can be learned from the records of Defendants and their co-conspirators.

39.    There are questions of law and fact common to the Class, which questions relate

to the existence of the conspiracy alleged, and the type and common pattern of injury sustained

as a result thereof, including but not limited to:

a.  Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of, restrict capacity of, and/or allocate markets for Refrigeration Compressor Products;

b.  The identity of the participants in the conspiracy;

c.  The duration of the conspiracy alleged in this Complaint ;

d.  The nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

e.  Whether the alleged conspiracy violated the federal antitrust laws;

f.  Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of the Plaintiff and other members of the Class and, if so, the proper measure of damages; and

g.  The effect of Defendants' conspiracy on the prices of Refrigeration Compressor Products sold during the Class Period.

40.  The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

41.  Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and all members of the Class directly purchased Refrigeration Compressor Products at artificially maintained, non-competitive prices established by the actions of Defendants and their unnamed co-conspirators in connection with the restraint of trade alleged herein.  Plaintiff and the members of the Class have all sustained damage in that they paid inflated prices for

12

purchased Refrigeration Compressor Products due to Defendants' conduct in violation of federal law as complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class. In addition, Plaintiff has retained counsel competent and experienced in the prosecution of antitrust and class action litigation.

43.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

45.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

**INTERSTATE TRADE AND COMMERCE**

46.    During the Class Period, Defendants directly sold Refrigeration Compressor Products in a continuous and uninterrupted flow of interstate commerce throughout the United States, including in this District.

47.    The unlawful activities of Defendants and the unnamed co-conspirators have been within the flow of, and have had a direct, substantial, and reasonably foreseeable effect on, interstate commerce in the United States and have caused antitrust injury in the United States.

**THE REFRIGERATION COMPRESSOR PRODUCTS MARKET**

48.    The Refrigeration Compressor Products industry is a multi-billion dollar industry.

49.    A Refrigeration Compressor is a device that compresses a refrigerant gas. When the gas is later permitted to expand, it absorbs and transfers heat, producing a cooling effect that forms the basis for a wide variety of refrigeration and air conditioning products.

50.    Refrigeration Compressors are used in a variety of product lines, including commercial refrigeration applications (such as freezers, dehumidifiers, display cases, and vending machines) and household refrigerators and freezers.

51.    Refrigeration Compressors come in three forms: hermetic, which are most common, semi-hermetic, and open.

52.    A hermetic compressor is basically an electrical motor or pump in a welded metal shell case. It is typically used in household refrigerators, residential air conditioners, smaller commercial air conditioning and refrigeration units; the motors are not designed to be easily worked on and if a compressor becomes damaged it is common to replace it rather than have it repaired.

14

53.    A semi-hermetic compressor is a compressor-motor assembly contained in a casting with no penetration by a rotating shaft and with gasketed cover plates for access to key parts such as valves and connecting rods.

54.    An open compressor is a compressor only with shaft seal and external shaft for coupling connection to belt- or direct-drive using as electric motor or natural gas engine. These are largely used for ammonia refrigeration applications as hermetic designs cannot be used with ammonia refrigerants, and for engine-driven units.

55.    Refrigeration Compressors are homogenous commodity products.  One Defendant's compressor can be replaced with compressors produced by other Defendants, as evidenced by tools on Defendants' websites enabling purchasers to identify appropriate substitutes for competitors' models.  Because Refrigeration Compressors are homogeneous commodity products, purchasers of Compressors and Compressor Products make purchase decisions based largely on price.

56.    Furthermore, demand for Refrigeration Compressors is highly inelastic, and there are no product substitutes for Refrigeration Compressors, enabling producers to raise prices without losing sales revenue.

57.    The homogeneity among Refrigeration Compressors and the inelastic demand for Refrigeration Compressors facilitated the development and maintenance of an anti-competitive conspiracy in the industry characterized by supra-competitive pricing.

58.    Data from the U.S. Bureau of Labor Statistics (BLS) confirm that price increases in the industry during the Class Period far exceeded price increases for related industries including "HVAC and commercial refrigeration equipment" and "total manufacturing."

15

59.    Between December 2003 and December 2008, average Refrigeration Compressor prices increased by 34.9%, whereas average pricing for HVAC and commercial refrigeration equipment increased by only 24.4% and average total manufacturing pricing increased by 19%.

60.    Over that period, Refrigeration Compressor prices experienced several sharp increases indicative of pricing manipulation by market leaders. From December 2004 to January 2005, average Compressor prices increased by 9%. Similarly, between December 2007 and July of 2008, Compressor prices rose 8.6%. And from September 2006 and January of 2007, average Compressor prices jumped by 7.6%.

61.    HVAC and commercial refrigeration equipment industry pricing and the total manufacturing pricing did not experience similar price gains over those short periods, despite the fact that Refrigeration Compressors are a component of each composite and that all three industry composites are subject to similar external economic forces. This divergence indicates that Refrigeration Compressor market leaders have colluded to artificially increase pricing.

62.    The worldwide Refrigeration Compressor market is highly concentrated and dominated by Defendants. Collectively, Defendants exert substantial control over the United States Refrigeration Compressor market. Whirlpool claims almost 50% of the North American Refrigeration Compressor market, and estimates that it sells as many as one out of every four Refrigeration Compressors purchased worldwide.

63.    In addition, there are significant barriers to entry in the Refrigeration Compressors market. Entry requires a company to incur significant start-up capital expenditures. A new entrant into the business would have to incur millions of dollar in costs, including those for manufacturing facilities and equipment, energy, transportation, distribution infrastructure and skilled labor. Furthermore, mandatory compliance with environmental regulations is costly.

64.    The highly concentrated nature of the Refrigeration Compressor market and the substantial barriers to entry facing potential competitors are conditions conducive to price fixing.

65.    Moreover, Defendants belong to a number of trade associations involved in the Refrigeration Compressor Products industry, including the Air-Conditioning, Heating and Refrigeration Institute (ACHR) in the United States, to which Defendants Danfoss, Tecumseh, Embraco NA, and Emerson Climate Technologies belong; the Association of European Refrigeration Compressor and Controls Manufacturers (ASERCOM), to which Defendants Danfoss, Whirlpool, and Tecumseh belong; and the Brazilian association, Associacao Brasileira de Refrigeracao, Ar Condicionado, Ventielacao e Aquecimento (ABRAVA). Participation in these trade associations has afforded Defendants the opportunity to collude and organize the anticompetitive scheme.

66.    In the United States, the market for Refrigeration Compressors has recently been in decline. The Compressor industry depends highly on U.S. manufacturing levels because most Compressors are sold to industrial customers. While U.S. manufacturing activity usually grows between 4 and 6 percent per year, during the last recession, manufacturing dropped 5 percent. Total U.S. durable goods manufacturers' shipments, an indicator of demand for compressors used in manufacturing operations and products, fell 2.7 percent in 2008 compared to the same period a year ago.

67.    In its 2007 Annual Report, Defendant Whirlpool described the global market as "challenging," observing that, while its international business reported record results, "North American results were lower primarily due to a weak U.S. industry appliance demand and significantly higher material costs." Manufacturers of Refrigeration Compressors have faced increasing cost pressure in recent years as the costs of inputs have increased. The cost of copper,

17

a major cost component of Compressors, has increased by 40% since 2006.  Increases in steel

prices have also increased costs associated with manufacturing Compressors.

68.     While a downturn in the economy and tight credit availability have caused a

decrease in appliance sales, Whirlpool, Tecumseh and other Compressor companies have been

reluctant to drop Compressor prices to generate order volume.  Whirlpool's operating profit

margins on Compressors have remained steady at 8% to 10%.

## GOVERNMENT ANTITRUST INVESTIGATION

69.     The investigation of the worldwide Refrigeration Compressor cartel began in

Brazil near the end of 2008 after one of the companies involved advised authorities of the cartel

in exchange for administrative and criminal immunity.

70.     On or about February 17, 2009, investigators conducted raids of the offices of

Defendants Whirlpool and Tecumseh in Brazil. Authorities swept through Whirlpool's Sao Paulo

and Santa Catarina state offices in an operation called Zero Grau, or Zero Degrees, with the

objective of finding evidence of a global cartel in the selling of hermetic compressors for

refrigeration. Sixty investigators, including personnel from Sao Paulo state and agents of the

Brazilian federal government, left with bags full of computers, laptops and other archival

material. The Brazilian justice ministry said in a press release that a price fixing scheme was in

place for nearly 12 years. It said that the participants agreed to raise prices and traded

commercially sensitive information, hindering free competition. The negotiations allegedly took

place through e-mails, phone calls and meetings, including at restaurants and hotels. The press

release noted that Refrigeration Compressors account for 30% of the costs of refrigerators,

freezers, vending machines and water fountains.

18

71.    Follow-up reports in the Brazilian press indicated that Tecumseh, Whirlpool and Danfoss were accused of being part of a worldwide conspiracy to fix prices and allocate markets for Refrigeration Compressors in which ACC and Panasonic also participated. Among those identified as participating in unlawful meetings were Paulo Perequito, President of Whirlpool International, and Verissimo Gerson, former President of Tecumseh Brasil.

72.    According to publicly available reports, the loss associated with the cartel in the Refrigeration Compressors market in Brazil alone is approximately $425 million. Brazilian press reports that 2008 losses from the cartelization of hermetic Compressors could range from BRL68 million to BRL125 million, or US$230 million to US$425 million.

73.    In the United States, Defendant Whirlpool Corporation said on February 19, 2009, that it received a grand jury subpoena from the DOJ earlier that week and that investigators visited company facilities in Brazil and Italy.

74.    Tecumseh said on February 19, 2009 that it was subpoenaed by the DOJ and received a request for information from Brazilian authorities. Tecumseh said the requests related to pricing issues.

75.    On February 25, 2009, Tecumseh Products disclosed the following:

> As the Company previously has disclosed, it is one of several companies involved in investigations into possible anti-competitive practices in the compressor industry being conducted by the antitrust authorities of the United States, Brazil and European Commission. Kent Herrick and Todd Herrick have not cooperated with the Company in its own investigation. The Company believes that they also have refused to cooperate with the investigating antitrust authorities, despite the Company's request that they do so. On February 12, 2009, the United States Department of Justice (the "DOJ") granted the Company conditional amnesty pursuant to the Antitrust Division's Corporate Leniency Policy, and the Company entered into an agreement with the DOJ under which the Company will not be subject to criminal

prosecution with respect to the investigation, so long as the Company continues to comply with the Corporate Leniency Policy. This requires, among other things, the Company's continued full cooperation in the investigation. The Company's amnesty arrangement specifically excludes Todd Herrick and Kent Herrick.

76.     DOJ spokeswoman Gina Talamona confirmed that authorities were probing "anticompetitive practices" in the Compressor industry and were working with foreign investigators.

77.     In late February 2009, Danfoss said that it was being investigated by antitrust authorities in Germany, Denmark and the United States on suspicion that it was part of the global cartel. Investigators visited company facilities in all three countries, Danfoss said.

78.     Around that time, European Commission officials and their counterparts from relevant national competition authorities conducted in various European Union Member States unannounced inspections of the premises of Defendants Whirlpool and Tecumseh, in addition to Danfoss.

## VIOLATIONS ALLEGED REGARDING REFRIGERATION COMPRESSORS

79.     Beginning at least as early as January 1, 1996, or earlier, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to fix, raise, maintain, and/or stabilize prices of, to restrict capacity of, to allocate the market for, and/or to otherwise engage in anticompetitive conduct regarding Refrigeration Compressors and products containing them, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

80.     The contract, combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and their co-conspirators, the

substantial terms of which were to fix, raise, maintain and/or stabilize prices, to restrict capacity, to allocate the market, and/or to engage in other anticompetitive conduct concerning Refrigeration Compressors.

81.    In formulating and effectuating the aforesaid contract, combination or conspiracy, Defendants and their co-conspirators did those things that they unlawfully combined and conspired to do, including, among other things:

    a.  agreeing to fix, raise, maintain, and/or stabilize prices for Refrigeration Compressors;

    b.  agreeing to limit the capacity of Refrigeration Compressors

    c.  rigging bids for Refrigeration Compressors;

    d.  allocating customers for Refrigeration Compressors;

    e.  exchanging information on customers and capacity; and

    f.  monitoring the implementation of the agreements among cartel members.

## FRAUDULENT CONCEALMENT

82.    Plaintiff had no knowledge of Defendants' unlawful self-concealing conspiracy and could not have discovered, by the exercise of due diligence, the contract, combination or conspiracy until February 19, 2009 because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

83.    Because the contract, combination, or conspiracy alleged herein was kept secret by Defendants, Plaintiff was unaware of the anticompetitive conduct in the Refrigeration Compressors industry. It was not until February 19, 2009 -- the date on which it was disclosed that the DOJ had issued grand jury subpoenas to Defendants Whirlpool and Tecumseh -- that

Plaintiff became aware, or could have become aware with the exercise of reasonable diligence, of Defendants' anticompetitive conduct.

84.    As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the right of action by Plaintiffs.

**COUNT I**

**Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

85.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

86.    Defendants' unlawful conduct resulted in artificially high supra-competitive prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class of direct purchasers of Refrigeration Compressor Products.

87.    Plaintiff and members of the Class had to pay more for Refrigeration Compressors than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

88.    Plaintiffs and the Class seek to recover for these overcharge damages.

89.    As a direct and proximate result of Defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Refrigeration Compressors than it would have paid absent Defendants' conduct. Plaintiff's injuries are of the type that the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a Class action under Rule 23 of the Federal Rules of Civil Procedures;

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.    That judgment be entered for Plaintiff and members of the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.    That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, continuing to engage in the anticompetitive conduct described herein;

E.    That Plaintiff and members of the Class have such other, further and different relief as the case may require and Court may deem just and proper under the circumstances.

23

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this complaint so triable.

DATED:  March 12, 2009                    Respectfully Submitted,

*Paul Mark Sandler*

Paul Mark Sandler (Trial Bar No. 00145)
Robert B. Levin (Trial Bar No. 00695)
SHAPIRO SHER GUINOT & SANDLER
36 South Charles Street
Charles Center South, Suite 2000
Baltimore, Maryland 21201-3147
Telephone: (410) 385-0202
Facsimile: (410) 539-7611


Steven A. Asher
        (*pro hac vice* application pending)
Mindee J. Reuben
        (*pro hac vice* application pending)
Noah Axler
Jeremy S. Spiegel
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone:  (215) 545-7200
Facsimile:  (215) 545-6535

Robert C. Cone
TUGGLE DUGGINS & MESCHAN, P.A.
100 N. Greene St., Suite 600
Greensboro, NC 27401
Telephone:  (336) 271-5230
Facsimile:  (336) 274-6590

***Counsel for Plaintiff American Industrial
Contractors, Inc.and the Proposed Class***

24